Good morning ladies and gentlemen. Good morning Judge Roedner. Good morning everyone. Judge Roedner is in the East Coast snowed in and operating from her home. So glad to have her with us. Thank you. The first case this morning is Planned Parenthood of Indiana v. Jerome Adams. Mr. Fisher. Thank you Judge Caney. May it please the court. When a juvenile court rules that a minor is mature enough to decide whether to have an abortion, that ruling does not emancipate the child for all purposes. Her parents retain an interest in her ongoing care, guidance, and upbringing. Indiana's abortion notice law advances that profound interest. Yet, because it does not also afford parents the legal or practical right to obstruct the abortion, it is not subject to the maturity exemption applicable to parental consent laws. Furthermore, Planned Parenthood cannot show that this law will inevitably lead to interference with the abortion rights of minors. So it cannot otherwise make out a pre-enforcement facial challenge to this statute. First, with respect to Bilotti and its applicability here, Bilotti held that there had to be an exemption for mature minors when we're talking about parental consent because the maturity of the minor enables the right to make the decision. Here we're not talking about the right to make the decision. We're talking about simply notice that the abortion is going to happen before the abortion. General Fischer, in footnote 5 of her decision on page 33 of the short appendix, Judge Barker noted that the 5th and 8th circuits require a Bilotti bypass for parental notification laws and that Indiana would stand alone as the only one of 17 states requiring parental notification to not allow a bypass for girls who have been deemed mature enough. Now, I have two questions. One is, is that correct? And my second question is, would we be splitting from the 5th and 8th circuits if we rule in your favor? Well, first, as to your first part of the question, are we alone, I don't think we are. I think based on what Planned Parenthood has said in its brief and the subsequent conversation I had with Mr. Falk this morning, I think Utah continues to have a notice statute without bypass for mature minors. But of course that was addressed in the Matheson case, but not as to what would happen with a mature minor. With respect to Oklahoma, my understanding is that they have a statute, Mr. Falk was telling me about it this morning, he can probably inform the court a little bit more about it, but my understanding is they have something similar. But of course, that leaves three, so I acknowledge that certainly we are unusual in this regard. Now, with respect to the 5th circuits, a couple of distinctions I would point the court to. In the Miller case out of the 8th circuit, that dealt with a 48-hour parental notice, not a notice like Indiana's which merely has to happen, quote-unquote, before the abortion. A 48-hour notice, I think, raises additional questions about the opportunity for the parents to intercede and to obstruct the abortion. Here, the precise timing and circumstances of the notice, while it must be either by certified male or in person, can otherwise be controlled by the minor and her attorney. Well, my point was going to be that to the extent that there were practical questions in the 8th circuit that would equate that notice law with a consent law in terms of the ability to obstruct, we don't have those inevitable consequences here. And that's why I think this pre-enforcement challenge is really inappropriate, because to the extent that there is a possibility, as Planned Parenthood says, that parents may yet use this as an opportunity to obstruct the abortion, that needs to come out in the application of the statute over time. There's a built-in process for every minor to have bypass around this notice. There's every opportunity to demonstrate to the Indiana courts in an expedited way that the notice would cause interference. Now, of course, the Indiana law contains no exemption for a girl found mature enough to make the decision on her own. And so if Bilotti applies, this law would be unconstitutional. Well, I don't think there's any getting around that, and that's why I think much of the debate here really is over whether Bilotti applies. Now, Your Honor also raised the 5th Circuit decision, and I wanted to point out there a couple of ways that that, at least the Louisiana statute invalidated there, is different. First of all, with respect to what should happen to a minor who is deemed mature enough to have an abortion, there was a problem because the discretion was still with the judge over whether it was a may statute, not a must statute. The judge may permit the abortion to happen. And second, with respect to notice, it wasn't notice of the abortion that was at issue. It was notice of the waiver proceeding. So it was obviously constructed with an eye towards inviting the parents into the waiver proceeding so that they could give input as to whether waiver was appropriate. So I think that there are some distinctions there, but I don't want to suggest that those cases in no way tried to or did implement the Bilotti standard. I just think that on the facts as to the precise nature of the statutes at issue, they were different and can be distinguished in that regard. Here's my problem. Why does the statute require notification before the court approved abortion is carried out? That timing seems designed to facilitate interference with a court-approved procedure to which a young woman has a constitutional right. Because what other purpose could the timing provision of that statute possibly have? Well, in short, I think to make sure that it gets done. Now, I certainly acknowledge that if the legislature had built in a time frame, a more structured time frame, that might suggest more of an intention to create an opportunity for the parents to become directly involved in a way that could interfere with the abortion. But this only says before, and I think part of the value of saying before the abortion is that it makes sure that everybody has it done and that it's all finished before the abortion occurs and there's no question as to whether post-abortion too much time has elapsed or it gets pushed down to some lower rung on the to-do list. Here, it's got to happen before the abortion, but it doesn't have to happen a set amount of time. It can be structured so that the mature child is on the way to the clinic when the lawyer knocks on the parents' door, introduces herself, and says, I represent your daughter. You've never heard of me, but your daughter's on the way to the abortion clinic. I'm trying to picture that scene. Well, this is a scene that I don't think anybody ever wants to have to carry out. This is a very difficult process, no matter how you look at it. And I don't think there's any way to get around that. Is it better to do that or better to send a certified letter with no personnel? Well, the certified letter option seems totally impractical if you need to confirm timing, right, unless it's going to happen days, a week before the abortion. So really the only practical option is in person, the person, the lawyer, the parents probably have never seen, says, I represent your daughter in this most intimate of decisions, and here's the news. That sounds downright dangerous under some circumstances. Well, I don't know that it would be dangerous, and I think there surely isn't a constitutional line between a personal notification and a notification over the telephone. You really don't think there's any danger there? Well, I don't know that we can assume that. I mean, I think that's the value of having some kind of workaround procedure, which is built into this statute. If there is a danger in a particular circumstance, that can be sorted out before the juvenile court judge. Mr. Fisher, in applying the undue burden standard after Casey and after Whole Woman's Health, it would be helpful for me if you could identify the problem that this notice requirement is intended to fix. Right. Well, I think the problem it's intending to fix is the lack of awareness of parents as they bring up their children that their daughter has been through this fraught procedure. And do we have any evidence of the nature of these problems or benefits that would be gained by this? I think the benefits that would be gained are fairly transparent. I mean, parents have a right to know what's happening with their children. I mean, the circumstances that gave rise to the need for the abortion, I mean, the parents need to be able to address that. Let's not forget, these are not emancipated minors. They're still under the care and control of their parents. If they're eligible to be married, right? Well, yes. I know they're not. But they're not. They may or may not be, but that's not emancipation. Eligibility is not emancipation. These are mainly 16- and 17-year-olds. They can be married. If they become pregnant, they can get an abortion without any spousal notice requirement, right? Right, but spouses are not parents. And I think that there's a distinction there.  I'd like to follow up on that danger thought because Judge Barker accepted the research and expert opinion that demonstrated that only about half of abused teens ever revealed their abuse. And so those teens will not engage in bypass procedure if they have to reveal abuse. Did the commissioner produce any evidence to the contrary? You see, it seems to me that if 96% of these girls, of which the statistics seem to bear out, are getting parental consent, we are addressing the family situations where teens are most at risk for abuse. Someone, some lawyer, coming and knocking at a door. Oh, my. I mean, it's fraught with danger for these children. Again, that's why the bypass procedure exists, and it's exactly that kind of thing that can be sorted out in the bypass procedure. Mr. Fisher, let me ask you to describe the family dynamics in a case where consent should be excused, but notice should not. Oh, you mean as far as best interests go? Well, my related question, in essence, is I'm not entirely clear on what the state's position is as to the significance of the silence about maturity as an exception for notice, whether that's deliberate or whether you're saying we should just fold that all into best interests. Well, look, I think maturity is a valid consideration in a best interests inquiry. I don't think it is on its own necessarily sufficient. I think a juvenile court judge, considering all the circumstances, could weigh maturity and decide that that is enough. Now, I think Planned Parenthood's position is there has to be a guarantee that maturity is sufficient, and I think that's where we differ. We don't think that there has to be any kind of guarantee of that. So describe for me the family dynamics that would convince a judge this young woman needs to be able to have an abortion without having her parents make this decision, without them consenting, but it's important that they know about this. Well, I think if you have a situation where – I'm still trying to make sure I understand. So it's in the best interest of the child to have the abortion, but it's not in her best interest for the parents to know about it. I think it's a concern about – That will often be the case. It may well be, and I think that that's something that juvenile court judges – Yeah. That is, no consent is required, but notice is required. Yeah, well, look, experts on family dynamics, I'm sure, would have any number of scenarios for that. But I think my response is perhaps there's a situation where there is a parent or someone else in the picture that could interfere if it's a consent issue and is unreasonably interfering, and there's otherwise – all the circumstances point towards the abortion being in the best interest, but there's a parent that's still in the picture that cares for this child and needs to know about it, even if consent's not required. Look, family dynamics are – you can't imagine what they are in advance. That's the point of having the bypass procedure, so the juvenile court judges can take that into account. Can I ask you also to address how this statute applies in the context of children in foster care? Right. I don't know how many of – we're talking here about very small numbers for judicial bypass. If I'm reading Ms. Smith's affidavit correctly, it would be on the order of 10 to 12 a year in the state of Indiana. But we know that girls in foster care wind up experiencing much, much higher rates of teen pregnancy, and it seems that this process could be much more daunting for a teen in foster care even than for a child trying to deal with difficult parents or avoid difficult parents on this. With a child in foster care, who would get this notice? The statute says the custodian of the child, and I understand that to mean the foster parents. I don't think it's enough that simply DCS knows about it. Mr. Fisher, you wanted five minutes for rebuttal here. I do. I want to make sure I've answered Judge Hamilton's question, but otherwise I'll reserve. Well, I'd like to ask you one more question if I could at this point, and if you want to defer the answer, I certainly appreciate it. But I think you and I may have already agreed, or I agreed with something you signaled earlier that I understood to be, that this can already be a pretty daunting process for a girl who's facing an unexpected pregnancy. And one of my questions is whether it's fair to read Whole Woman's Health as saying that when we evaluate benefits and burdens under the undue burden standard, it's that state-imposed obstacles to exercising a right to have an abortion have to be evaluated in terms of their cumulative effects and not just in isolation. Well, I think if you're going to evaluate in terms of cumulative effects, you actually have to have evidence of that, and that's what we don't have here. And that's why the as-applied challenge, or an operational challenge, if you will, could conceivably be valid down the road. But before the thing has even been enforced, I don't think you've got the evidence of the cumulative burdens. So I'll reserve the remainder of my time if I may. Mr. Faulk, may it please the Court, taking off on the last question, Whole Woman's Health does require us to focus on evidence, and there is evidence here. The evidence establishes that parents, if they're given notice, may attempt, and some do, block the abortion of even a mature minor. The evidence discloses that even if parents do not physically obstruct the attempt to obtain an abortion by the young women, notice will lead to abuse, both physical and emotional. The evidence indicates that the sexuality of the young woman, which obviously is brought to the forefront by the abortion, is a trigger for abuse. The evidence establishes that young women will be cast out of their homes by parents when they find out, and they will suffer other injuries. Why isn't it sufficient to leave that to the individual judge in the individual case, dealing with evidence about this particular family or foster situation? As you noted, Your Honor, this is a daunting process, and the evidence discloses that, particularly with young women who are abused, they simply, in most situations, are not going to be capable of articulating that abuse before a perfect stranger. Dr. Pinto indicated that was something that often had to come out through lengthy therapy, and certainly is not going to be volunteered. The young women simply won't be able to do it. And as a result, the evidence here, and again, I'm focusing evidence because we do have evidence, is that the consequence of all this is that young women will not even attempt to try to obtain a bypass. As the Indiana Bypass Coordinator noted, notice is a deal breaker. It is the determinative factor for young women to know that at least up to July 1st of last year, the people who were trying to assist them in the bypass could tell them, look, no matter what happens, win or lose, your parents aren't going to find out. That was the necessary reassurance so they could go through. And this is not unique. The Supreme Court in Casey recognized that the spousal notification provision there was unconstitutional, not just because it might lead to spouses abusing their wives seeking abortions, but because the deterrent effect would force the women not to even try. And again, this court itself in Pearson stated that it was not speculative to assume that even mature young women would not attempt to try and obtain a bypass if there was a risk that there would be notice to the parent. And this court said in that situation, a notice statute has the same deterrent effect as a consent statute. Does religion play any part in this? It does, doesn't it? Well, I was pausing because I think one of the lawyers who assists Indiana women in bypasses attested in her declaration that frequently the religious objections of the parents are so strong that young women are terrified that they might find out that they're both pregnant and seeking an abortion. So that's one of the dynamics there. And the problem, of course, is if we just leave this... Well, they may not be terrified, but you could use a different word, but you could also use terrified, I suppose. I was speaking from the young woman's perspective. Yes, I understand. And I think that explains exactly why we can't wait for the juvenile court to sort this all out, because number one, most of the cases won't ever get to the juvenile court because the young women will not come forward, and number two, if they do, the idea of presenting a best interest case is so much more daunting than a maturity case. If you're a 17-year-old, you're in the lawyer's office, and the lawyer brings out that you have a job, you have plans, you have this, the lawyer can pretty confidently say to the young woman, the court's going to find you're mature. But when you're talking about best interests, if you have to talk about family dynamics, if the young woman is unwilling and unable to volunteer that, anything could go. And that is why I think that both the Fifth Circuit in Causeway and the Eighth Circuit in Miller recognize, as did this court in Pearson, that notice can, in fact, lead to a veto. And that is why there has to be a bypass for mature young women. And that is the rule in the large majority of states. I did discover late yesterday, and that was what Mr. Fisher was alluding to, that perhaps Oklahoma has a notice statute. I will have to notify the court of that when I finish that research. But certainly, Indiana is an outlier. And Indiana's, I should say, Indiana's procedure is really an outlier because I don't think there's any other state that has a procedure that has, in effect, two proceedings in one. So you have the court first deciding bypass, and then the court switches to notice. And one of the problems with that, Your Honor, is let's say the court says, you get the bypass, but, lawyer, I'm ordering you to give notice. The lawyer's off the case. The young woman then says, for whatever reason, I'm too scared to go through with it. I'm not going to do it. There's no way of stopping the notice. Notice is going to be issued even if, even in that situation, if the young woman decides not to proceed with the abortion because no lawyer is going to disobey the court order. This court order is saying, you have to give the notice. And this court in Pearson stressed that there is absolutely no state interest in requiring. Why wouldn't the order just say, you have to give notice before this is carried out? Isn't that easy to avoid? Well, I don't think it's so from the lawyer's standpoint, Your Honor, because the client might then say a day later, I don't want to do it. The lawyer is stuck with an order which says you shall give the notice. I don't think any lawyer is going to disobey that order. But more to the point, of course, is the mature young woman. But what in the statute allows for parental notification even if the bypass is not approved? I mean, if the notice is to be provided by the minor's lawyer, isn't it exceedingly unlikely that the lawyer will notify the parents when no abortion will occur? I don't think it's unlikely at all the lawyer will notify the parents in a situation where after the court hearing, the young woman on her own decides that she's just too scared to go through with the proceeding. Because at that point, the lawyer would have already had an order saying, you have to give the notice and any lawyer that I know of is going to obey that court order. But more importantly, you have the mature young woman in a situation where the Supreme Court has stressed in Bilotti and Akron and other cases that a mature young woman must be able to obtain an abortion without interference amounting to obstruction by her parents. And that's exactly what this statute allows and statute will do. And that is what the evidence shows. The evidence demonstrates. The commissioner pointed out in the briefs that if the minor requires post-procedure medical care, the parents must consent under Indiana law. Doesn't that provide a parent with a need to know that the daughter has had an abortion? And if not, why not, Mr. Falk? Your Honor, I think the decision, the problem is, is with the timing of the notice designed to occur before the abortion, that the notice will in effect allow for a veto. The court was quite clear in Bilotti and quite clear in Danforth, that is something that cannot occur. Subsequent, any subsequent problems, if there are problems, can be dealt with in the same way as they could in a regular bypass situation where the abortion has occurred. There's no evidence as to how frequently any problems occur. These are young women who had the resources to get to Planned Parenthood in the first place to obtain the abortion. I assume they could continue to have those resources to do so again. Those are hypotheticals, and what we have, on the other hand, is our evidence as to how women will, the young women will actually be deterred from trying to even obtain the abortion. And that is something the Supreme Court has said cannot occur. If the statute required notification only after the court approved abortion had been completed, how would your argument change? In other words, if the possibility for interference with the exercise of rights were removed, how does that change the calculus here? Well, at that point, the state's interests would be more aligned with the way the statute reads. We would still have to deal, and I don't know what the evidence would show, but we would still have to deal with the deterrent factor, the fact that some young women, because of the risk of abuse, may nevertheless be deterred from even attempting to obtain the abortion. We obviously would not have to deal with parents who were actually obstructing the abortion, but we'd still have to consider the risk of abuse and deterrence because of that risk. But I think the state would, as I said, be much more aligned with its rationale having a statute like that, because now what the statute guarantees is an opportunity to obstruct the abortion. Your Honor, as I indicated... Could I just, a couple of things. Mr. Falk, am I reading correctly from the record here that second trimester abortions are no longer available in the state of Indiana? Second trimester abortions are not available from abortion clinics. I believe there are situations, and they're very rare, where inhospitalization can occur, I believe. Okay, but some hospitals still do perform, or at least one does. I think if there are serious health problems, I believe that's correct, Your Honor, but that is not something that abortion clinics' Planned Parenthood does. Okay. And have I got those numbers about right? We're talking about 10 to 12 a year in the state of Indiana? That is the number that the abortion coordinator from Planned Parenthood, there are at the current time, I believe, two other clinics operating in Indianapolis. It's probably a few more, but it is a small number. And as the court, someone noted, I apologize, 96%, I believe, of all abortions are done with parental knowledge and consent. And do we know out of the bypass, we know that the state is prohibited from consenting in the case of children who are born in the state by statute. That is correct. Do we know what proportion of the bypass cases involve girls in foster care where we have these higher risks? I do not know that, Your Honor, and I doubt there are records kept through a compilation called the Termination of Pregnancy Reports, which are compilated annually. I don't think that's asked, so I do not know. As I said, Your Honor, this is an evidence-based determination, and the evidence demonstrates that the notice provision that allows even mature minors to be notified or have their parents be notified of the abortion will impose a substantial obstacle. The statute is unconstitutional, and the district court must be affirmed. Thank you. Mr. Fisher? You have about four minutes. Thank you, Your Honor. First, I don't understand the scenario where the lawyer would be required to notify the parents even if the abortion is not carried out. I think Your Honor hits it exactly right that the order would say the notice must happen before the abortion, and then if there is no abortion, there is no notice. Now, the idea that somehow the lawyer and the child would not be in communication after the hearing about all of this, I don't understand that, and certainly to the extent that a juvenile court judge would depart from that meaning of the statute, that could be appealed expeditiously. Now, with respect to the timing issue, I think Mr. Falk seems to embrace the idea, or concede, I guess, may be the better word, that there is a state interest going forward and a parental interest going forward, and it seems like now he's concerned only about does it happen before or after, is it only about the potential for interference, which then we get back to the idea, do we have to prove or does Planned Parenthood have to prove something about what's going to happen in that scenario? Burden from a woman's choice clearly is on Planned Parenthood. You cannot just assume that the worst-case scenario is going to play out in advance. You have to give the statute time and an opportunity to go into effect and then measure the impact. Mr. Falk was, on the one hand, suggesting that the hypotheticals that he was responding to were not really a sufficient way to gain insight here, when, in fact, all the evidence that they provide is hypotheticals. It is hypothesis about what these social scientists and lawyers think will happen based on what their experiences have been in the past. We don't have experience under the statute to know how everyone is going to react, and I think it's unfair, and certainly in contravention of a woman's choice to base a constitutional determination based on assumptions about what seems likely to happen in the future. Was there any evidence about, to the extent there was such evidence, about how often abortions, the medical procedure involving abortions, was accompanied by some outside medical problem? Nothing in the record that I'm aware of, Your Honor, but certainly the potential for unrelated medical problems, or related but other medical problems going forward does arise. Parents have this ongoing interest and obligation in caring for their children, both at a medical level and a psychological and emotional level and in terms of a personal conduct level. So these interests can't be denied. They're manifest, and that's what the statute is trying to advance. If there's nothing else, I'll conclude there. Thank you. Thanks. Thank you, Mr. Treasurer. Thanks to both counsel, and the case will be taken under advice.